## VAUGHAN AND WIFE *vs.* BIBB, Guardian.

[SETTLEMENT OF GUARDIANSHIP ACCOUNTS.]

1. *Receipt of married woman and husband; when binding.*—If a married woman and her husband join in a receipt to her guardian for a sum of money due her as the ward of such guardian, the receipt is binding on her, unless there is mistake or fraud.—Ordin. No. 38, 1867.

2. *Receipt for Confederate money not void.*—Though the consideration of such a receipt may have been land or Confederate money, it would not be void for this reason. And the ward would be bound for the amount at which she and her husband re-sold the land thus obtained, though she only received Confederate money in payment, when there was no dissatisfaction manifested by her and her husband with the sale thus made.

3. *Probate court, power of, to re-state accounts during same term.*—The court of probate may recall and re-state an account of a guardian, once allowed and passed, during the same term at which it was so passed. The court's power over such a proceeding does not end until the court is adjourned without day for the term.

4. *Exception, when not noticed.*—An exception which is not unintelligible on account of the blanks in it, will not be noticed on a general assignment of errors.

5. *Same, when not sustained.*—Exceptions not supported by facts set out in the record will not be sustained.

6. *Interest, guardian's general liability for.*—Generally, a guardian is only liable to account for simple interest. He can not be charged compound interest unless he receives compound interest, or has been guilty of a gross abuse of his trust.

APPEAL from Probate Court of Montgomery.
Heard before Hon. DAVID CAMPBELL.

The facts appear in the opinion.

WATTS & TROY, for appellants.
STONE, CLOPTON & CLANTON, *contra.*

(No briefs came into the Reporter's hands.)

PETERS, J.—This is an appeal from the decree of the
court of probate of Montgomery county upon a guardian's
final settlement.  There is also an agreement of counsel
filed with the transcript of the record, that the same
transcript "may be considered as an appeal from the final
settlement of W. C. Bibb's administration of the estate of
Priscilla Ann Bibb, and that the two cases may be consid-
ered together on this record."  There is no record in the
case of the administration suit filed, and no appeal taken,
and so far as I have been able to ascertain, no final decree
rendered in that suit, and there is but one assignment of
errors made.  Under such a state of the record, the ad-
ministration suit can not be treated as a proceeding prop-
erly in this court, and no notice will be taken of that cause.
The mode of bringing a cause to this court is too well
known to allow such an irregularity to take its place.—
Rev. Code, § 3485, *et seq.*

Without further notice of the administration, I will,
then, proceed to dispose of the appeal on the guardian's
settlement.—24 Ala. 375.

The guardian's account was stated and filed for allow-
ance in the usual form, and a day was fixed by the court
for the hearing of the same.  Upon the hearing, the ward
and her husband objected to the allowance of one item of
credit of ten thousand dollars.  This item was supported
by the receipt of the ward and her husband for that
amount, which was paid December 5th, 1860.  On this ob-
jection, the record of the settlement of the guardian as
the administrator of the estate of Priscilla A. Bibb, de-
ceased, was introduced, but it was in no wise connected
with this item of the guardian's account.  It was also
shown that after the marriage of the ward, who was the
daughter of the guardian, with Vaughan, the guardian had
sold to said ward and her husband a tract of land for nine

thousand five hundred dollars, and paid them in money five hundred dollars beside; that the value of the land and the sum thus paid amounted to ten thousand dollars. And the amount thus made up was received by Vaughan and wife (the ward) as so much of her estate in the hands of said guardian. It was shown that Vaughan and his wife became dissatisfied with the land thus sold to them, and sold the same back to said guardian for eight thousand dollars, which was paid in treasury notes of the Confederate States. There was some evidence that the guardian had said on the first sale of land as above said, that he owed his ward about ten thousand dollars, but this was contradicted, there being but a single witness on each side as to this fact. There was no proof that there was ever any dissatisfaction expressed with the second sale of the land, as above shown, by Vaughan and wife to her guardian, or that they suffered any loss on the Confederate money that was paid to them, at that time. There was also considerable evidence as to the value of the land above said when it was first sold by the guardian to the ward and her husband; some of the witnesses stating that it was worth three dollars per acre, others stating it was worth five, and the guardian himself testifying that it had not been sold above its true value.

Upon this testimony the court below allowed the objection to the extent of two thousand dollars, and decided that the guardian was entitled to a credit of eight thousand dollars, "the amount of the Confederate treasury notes," which the guardian had paid to the ward and her husband in the fall of 1862, when the land was re-conveyed, and interest thereon. To this allowance the ward and her husband excepted, and now base an assignment of error in this court on this exception.

The bill of exceptions also shows that the court permitted the guardian to strike out of his account "the sum, to-wit, of $——. with which he had charged himself, and to insert in lieu thereof the sum of $——;" which was also excepted to by the ward and her husband.

. The bill of exceptions likewise shows that the guardian

was permitted by the court to "re-state his account as the same was passed and allowed by the court." To this the ward and her husband also objected and excepted. But no reason is shown for the exception.

The ward and her husband also excepted to "the allowance of each alteration in said account as originally filed, save only the rejection of the said item of ten thousand dollars."

The ward and her husband likewise asked the court to charge the guardian with "the difference between compound and simple interest on the several sums" which said guardian had received from the estate of Edward Sims, who was the grandfather of the ward, and from whom the estate of her mother had been received, and which was the estate from which her own was derived. But this the court refused, and the ward and her husband excepted.

Upon the hearing of the guardian's account in the court below, the ward was found indebted to him in the sum of $3,573.33, and he was discharged. The ward and her husband appeal to this court from said decree of discharge, and assign the same for error, and base other errors upon the exceptions above stated.

It does not appear that the ward was a minor when the receipt for the ten thousand dollars was executed. But whether this was so or not, it seems that the receipt of the husband alone would be sufficient. And this would bar her, equally with himself, if there was no fraud or mistake in its procurement.—Rev. Code, § 2375. The receipt given by the ward and her husband is in the following words: "Received, Montgomery, Ala., December 5th, A. D. 1860, of William C. Bibb, administrator of the estate of Priscilla A. Bibb, deceased, and as guardian of my wife, Cornelia D. Bibb, ten thousand dollars in full payment to date as administrator and guardian aforesaid, including the proceeds of the lease of land in Noxubee county, Mississippi, up to the 1st of January, A. D. 1863." Signed, "Vernon Henry Vaughan," "Cornelia D. Vaughan." No doubt that parties who are competent to act for themselves may settle their affairs without going into court and invok-

ing its aid, if they choose to do so. And such settlements, if free from mistakes and fraud, are final and binding as if done in court.—*Carter v. Owens*, 41 Ala. 217; Rev. Code, §§ 2685–86; *Motley v. Motley et al.*, 45 Ala. 555. The fact that the receipt thus given measured the value of the thing received in what is called "Confederate treasury notes," does not render it invalid. There is no pretense that there was any fraud in the transaction, or that the parties did not know perfectly well what they were about. Adams' Eq. 183, note C. It has been settled by the highest court of the nation, that a sale of lands for Confederate money is not void, but that the party bound is liable for the value of the consideration, however spurious it may have been as a currency.—*Thorington v. Smith*, 8 Wal. 1; see *Anderson v. McGowan*, 45 Ala. 462. On the re-sale of the land to the guardian, the husband and the wife, who was the ward, fixed the value of the consideration for which they had given the receipt. If they are now permitted to set this at naught, there would be no finality in such transactions. This does not seem to have been the purpose of the statute governing such instruments.—*Motley v. Motley et al.*, *supra*. Then there was no error in the action of the court below upon the matter of the receipt, and the decision upon the objection based upon it.

The third exception is not well taken. There was no error in merely permitting the re-statement of the account, if it was done during the term. Such matters are under the control of the court until the term of the court is closed by adjournment.

The third exception is based upon no facts that serve to make it intelligible. And the same may be said of the fourth and the fifth exceptions. They are too indefinite to raise any clear question of error in the court below.

The sixth exception can not be sustained. A guardian is not liable to account for more than simple interest, unless he receives more. Here it does not appear that he did, or that he has been guilty of any gross abuse of his trust.—Rev. Code, §§ 1827, 1828, 1829; 17 Ala. 306; 23 Ala. 385.

The very general terms in which the assignments of error have been made in this case, has compelled me to deal rather with the questions made in the bill of exceptions than with the assignments.—21 Ala. 504; 20 Ala. 477; Rev. Code, p. 816, Rule I Pr. in Sup. Court.

There is no error in the judgment and proceedings in the court below. Its decree is therefore affirmed.